# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Civil Action No. 1:17-cv-_____

ETHAN PROCTER

    Plaintiff,

vs.

WELLS FARGO & COMPANY, a corporation,

JENNIFER NACE, an individual,

    Defendants.

_____

## COMPLAINT AND JURY DEMAND
_____

Plaintiff, Ethan Procter ("Procter"), by and through his undersigned attorney, for this Complaint against Defendants Wells Fargo & Company ("Wells Fargo") and Jennifer Nace ("Nace"), states as follows:

## NATURE OF ACTION

1. Plaintiff, Ethan Procter, brings this action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a) and alleges retaliation and interference with his rights thereunder by Defendants.

2. Plaintiff would state that this action is not related to any other actions filed in this Court or any other Court.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that Plaintiff's claims arise under the FMLA, 29 U.S.C. § 2601, *et seq.*

4.      Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this District and because the Defendant Wells Fargo does business and is located in this District.

5.      This Court has personal jurisdiction over Defendant Wells Fargo because it does business and is found in the District of Colorado, and because the claims set forth herein arise, in whole, from events that occurred in the District of Colorado.

6.      This Court has personal jurisdiction over Defendant Nace because, upon information and belief, she is still employed by Defendant Wells Fargo and resides in Arizona.

## PARTIES

7.      Procter is an adult citizen of the State of Colorado and resides at 129 Palisade Circle, Manitou Springs, CO 80829.

8.      At all material times to this Complaint, Procter was an "eligible employee," within the meaning of 29 U.S.C. § 2611(2), because he had been employed by Defendant Wells Fargo for at least twelve (12) months prior to the events described in this Complaint and worked at least 1,250 hours for Defendant Wells Fargo during the twelve (12) month period preceding the events described herein.

9.      Defendant Wells Fargo is an entity doing business at its Alma School – Fiesta Mall Banking Center, 1333 S. Alma School Road, Mesa, AZ 85210.

10. At all times material to this Complaint, Defendant Wells Fargo was Procter's employer within the meaning of 29 U.S.C. § 2611(4).

11. At all times material to this Complaint, Defendant Nace was Store Manager 3, the manager of Wells Fargo Fiesta Mall Banking Center, and Procter's supervisor.

## FACTS

12. Procter began employment with Wells Fargo on or about April 2012.

13. Procter was employed full-time by Wells Fargo, starting as a Teller at $10/hr. He earned multiple promotions and top ratings for his performance.

14. In November 2015, Procter became "Store Manager 1" at Wells Fargo Fiesta Mall Banking Center. He was paid an annual salary of $48,500. That location is Wells Fargo's largest and busiest location within the "district".

15. In that position, Procter frequently worked 12-14 hours per day, with few if any breaks.

16. Procter began to experience significant health problems related to stress, depression, and sleep. He applied for and was granted intermittent FMLA leave beginning on February 2, 2016.

17. At about the same time, Procter disclosed to Nace that he is HIV-positive, i.e. he is infected with the Human Immunodeficiency Virus, which causes Acquired Immune Deficiency Syndrome ("AIDS").

18. Nace expressed skepticism and hostility in her communications with Procter because of his disability and his need for FMLA leave.

19. Nace attempted to limit and otherwise interfere with Procter's FMLA leave by complaining to Wells Fargo's human resources ("HR") department about the timing and duration of any leave Procter took, or was permitted to take.

20. Because of Nace's actions, Procter made every effort to avoid or minimize any intermittent leave that he took.

21. In late July 2016, Procter became critically ill due to an infection, which he contracted because of his HIV disease and its effect on his immune system. Procter was hospitalized for a week and then spent the next three (3) weeks at home continuing to receive medical care. Procter maintained regular contact with Wells Fargo and Nace during this time.

22. Upon Procter's release from the hospital and recovery from his illness, he learned that Wells Fargo had added another Store Manager 1 position to the Fiesta Mall Banking Center, in addition to his own position. He asked whether he was being replaced, and Defendants repeatedly assured him that this was not true. Defendants told him that this second person would help support the staff at that location during his return, and also assist the staff in preparing for Nace's anticipated maternity leave in approximately November 2016.

23. At this time, Procter requested Defendants reasonably accommodate his disabilities. He contacted Wells Fargo HR and asked for a work schedule of 40-45 hours per week. Wells Fargo HR replied that this was reasonable, and instructed Procter to discuss it with Nace. HR told Procter to call back if he did not receive this requested accommodation.

24. Procter later learned that Nace told another Wells Fargo store manager that she would never tolerate him working a schedule of 40-45 hours per week.

25. Procter returned from FMLA leave on August 21, 2016.

26. Within the first two hours after he arrived in the morning, Nace approached Procter directly and asked him if he had started looking for a new position.

27. Procter immediately contacted HR about this communication. HR set up a conference call between Procter, Nace, and Sergio Tiko Baiza, the District Manager ("DM") to discuss the matter. During this call, Nace and Baiza denied that Procter was being replaced or otherwise reduced in his position.

28. Procter applied internally within Wells Fargo for three positions for which he was fully qualified. Nace directed him to give her the names of the hiring managers for those positions so that she and Baiza could support him. Procter was not granted interviews, and was not selected for any of the three positions.

29. The new "second" manager, Ms. Sandy Kim ("Kim") arrived at the branch. Nace gave Procter's desk to Kim. Nace and Kim then worked privately with each other, excluding Procter. Nace systematically removed nearly all of Procter's duties and responsibilities, until he was doing little more than customer service evaluations.

30. On or about early September 2016, Procter learned that he was the subject of an internal investigation by Wells Fargo concerning alleged misuse of his authority in connection with two financial transactions involving his own personal bank/investment accounts with Wells Fargo.

31.  Specifically, Procter had previously made two transfers of funds from his Capital One banking account to his Wells Fargo account, each about one month apart. The movement of funds for both transfers were delayed for several days each. In both instances, a Service Manager at Fiesta Mall Banking Center approved a routine "credit memo" which temporarily credited Procter's account in the amounts of the pending transfers.

32.  Procter did not direct this person to issue the credit memo in either instance. However, this procedure was routine and did not differ in any respect from such actions for any other bank customer.

33.  Wells Fargo does not have any rule or policy that prohibits the use of credit memo authorization on behalf of a bank employee who is also a customer, involving that employee's private funds.

34.  The transferred funds related to each credit memo did arrive in Procter's destination Wells Fargo account after the delay of several days. There was no theft, misappropriation, or loss of funds associated with either transaction.

35.  Procter truthfully and completely stated all of the above regarding the credit memo matters to Wells Fargo's investigators.

36.  On September 23, 2016, Procter was placed on administrative leave.

37.  On September 28, 2016, Defendants terminated Procter's employment. Nace personally informed Procter of this decision by telephone. Upon information and belief, Nace made the decision to terminate Procter's employment.

38. Procter later learned that Nace told other Wells Fargo employees that he had repeatedly used the credit memo function and that the funds had not been credited to his account, and that this was the reason for his termination.  This was, and is, false.

39. Wells Fargo employees in nearby branches in the same region or district have used the credit memo function in connection with the banking transactions of fellow Wells Fargo employees and their personal Wells Fargo bank accounts.  Those employees were not terminated.

40. Wells Fargo did not replace Procter after his termination.  Kim remains employed in her position.

41. On February 2, 2017, Procter filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging that Defendants discriminated and retaliated against him because of his disabilities, in violation of the Americans with Disabilities Act, as amended.  Upon exhaustion of his administrative remedies and receipt of a Notice of Right to Sue concerning that Charge, Procter will amend this Complaint to add those claims against Defendants.

### **FIRST CAUSE OF ACTION**: INTERFERENCE WITH PLAINTIFF'S EXERCISE OF RIGHTS UNDER THE FMLA, 29 U.S.C. § 2615(a)(1)

42. Procter re-alleges and incorporates all preceding paragraphs.

43. The FMLA, as codified at 29 U.S.C. § 2615(a)(1) prohibits an employer from interfering with the exercise of or the attempt to exercise any right provided by the FMLA.

44. Nace is a "person who acts, directly or indirectly, in the interest of any employer to any of the employees of such employer", as defined by the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I).  Nace is personally liable for all violations of Procter's FMLA rights, as alleged herein.

45. Procter exercised a right under the FMLA when he applied for and was granted intermittent leave for treatment of a serious medical condition beginning on February 2, 2016.

46. Nace's actions interfered with, restrained, or denied Procter's right to intermittent leave, a benefit to which he was entitled under the FMLA.

47. Procter exercised a right under the FMLA when he applied for and was granted leave for treatment of a serious medical condition from late July to August 20, 2016.

48. Defendants willfully interfered with, restrained and denied Procter's exercise of his rights as guaranteed by the FMLA, in violation of 29 U.S.C. § 2615(a)(1), by (a) establishing the position of Procter's replacement, while he was on leave; (b) replacing Procter with Kim after Procter's return from leave, by giving his responsibilities to her; and (c) terminating Procter's employment.

## SECOND CAUSE OF ACTION:

**RETALIATION AGAINST PLAINTIFF FOR ENGAGING IN PROTECTED ACTIVITY UNDER THE FMLA, IN VIOLATION OF 29 U.S.C. § 2615(a)(2)**

49. Procter re-alleges and incorporates herein by reference the above paragraphs.

50. The FMLA prohibits an employer from discharging or in any manner discriminating against an individual because he engaged in FMLA protected activity.

51.  Procter engaged in FMLA protected activity when he requested and was granted leave to treat his own serious health condition beginning on February 2, 2016, and again in late July 2016.

52.  Defendants' decision to replace Procter was motivated by his absence from work on FMLA-protected leave.

53.  Defendants' actions to replace Procter, by giving his duties to Kim after his return from FMLA-protected leave, were motivated by his absence from work on FMLA-protected leave.

54.  Defendants' termination of Procter was motivated by Procter's absence from work on FMLA protected leave.

55.  Defendants would not have replaced or terminated Procter had he not taken FMLA leave.

56.  By replacing Procter while he was still employed, and thereafter terminating his employment, Defendants willfully discriminated and retaliated against Procter for exercising his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ethan Procter, respectfully requests judgment and prays for the following relief:

A.  Declaratory judgment on his FMLA interference and retaliation claims;

B.  Damages equal to the amount of wages, salary, employment benefits and other compensation denied or lost to Plaintiff by reason of the termination of his employment, together with interest thereon, pursuant to 29 U.S.C. §2617(a)(l)(A)(i)(I) and (ii).

C. An additional amount as liquidated damages equal to the amount of damages and interest awarded as requested in paragraph (B) above, pursuant to 29 U.S.C. § 2617(a)(l)(A)(iii).

D. Plaintiff's costs of this action, reasonable attorney fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3); and

E. Such other legal and equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated this 20th day of April 2017.

>  */s/ Gary M. Kramer*_____
>  Gary M. Kramer
>  Appearing *pro hac vice*
>  Gary Kramer Law, LLC
>  1465 Kelly Johnson Blvd, Suite 210
>  Colorado Springs, CO  80920
>  Tel (719) 694-2783
>  Fax (719) 452-3622
>  gary@garykramerlaw.com
>  *Attorney for Plaintiff, Ethan Procter*